**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MAXIMO ESPINOSA | : | NO. 07-482 |

**MEMORANDUM RE: MOTIONS TO SUPPRESS**

Baylson, J.                                                    **December 24th, 2008**

Defendant in this case has filed several separate motions to suppress evidence allegedly

obtained in violation of his civil rights.  Specifically, Defendant seeks to suppress the following:

(1)    Statements made during and shortly after Defendant's first arrest for conspiracy
(2)    Statements made after Defendant's first arraignment for conspiracy to deliver heroin but before Defendant's second arraignment on additional charges
(3)    Evidence sized as a result of a search on an apartment allegedly occupied by Defendant

Judge Golden has previously denied a motion to suppress the evidence obtained from the

apartment.  After considering Defendant's objections on the admissibility of the various

statements, this Court finds that Defendant's rights were not violated and thus denies all of

Defendant's remaining motions to suppress.

**I.    Background**

**A.    Facts**

The Defendant was first arrested near his home in Allentown, Pennsylvania on May 18,

2006.  The arrest occurred at approximately 9:30 p.m. when another individual, Irene Irizarry,

allegedly brought illegal drugs to the Defendant.  (N.T. Pgs. 5-6, 10, Feb. 19, 2008 AM).  The

Defendant was initially approached by Detectives Cruz and Boyer from the City of Allentown

Bureau of Police inside Little John's Pizza Shop, as he was about to meet Ms. Irizarry. (N.T. Pg.

11, Feb. 19, 2008 AM).

Detective Cruz testified that he instructed Defendant at this time that the police were

conducting a drug investigation and that Defendant was not under arrest, but he was not free to

leave. (N.T. Pg. 11, Feb. 19, 2008 AM). While in the shop, Detective Boyer noticed two cell

phones sitting on the counter-top of the shop, near Defendant. Detective Boyer asked Defendant if

the phones belonged to him, and Defendant confirmed that they did. (N.T. Pg. 65, Feb. 19, 2008

AM). Detective Boyer testified that Defendant was not in handcuffs at this time and had not been

warned of his Miranda rights. (N.T. Pgs. 70-71, Feb. 19, 2008 AM).

Shortly after that conversation, the Detective escorted Defendant outside, where both

Detective Cruz and Detective Boyer gave Defendant his Miranda rights. (N.T. Pg. 12, Feb. 19,

2008 AM). Both Detectives testified that Defendant waived those rights at this time. (N.T. Pgs.

12, 66, Feb. 19, 2008 AM). During the conversation that occurred outside the pizza shop and after

Defendant had been read and waived his Miranda rights, the Detectives requested permission to

search an apartment, Apartment No. 12 at 709 North 9th Street in Allentown, which they believed

belonged to Defendant. Defendant refused to consent to a search of the apartment and stated that

his wife, not he, lived at that address. (N.T. Pgs. 13, 67-68, Feb. 19, 2008 AM).

The Detectives next took Defendant to Apartment No. 12, where he continued to deny his

occupation of the apartment. (N.T. Pgs. 13-15, Feb. 19, 2008 AM). Detective Cruz testified that

he then secured the Apartment and removed Defendant to the police station, at which point he was

arrested for conspiracy to possess with the intent to deliver four hundred and ninety-nine bags of

-2-

heroin. (N.T. Pgs. 14-15, Feb. 19, 2008 AM).   Detective Cruz began preparing a search warrant

for Apartment No. 12, which he eventually secured and executed at approximately 1:15 a.m. on

May 19, 2006. (N.T. Pgs. 14, 18, Oct. 8, 2008).  During the search, the police located additional

controlled substances and a firearm inside Apartment No. 12.  (N.T. Pg. 17, Feb. 19, 2008 AM).

After his arrest, Defendant was held in custody and then arraigned, at approximately 11:15

a.m on May 19, 2006, on a charge for conspiracy to deliver drugs. (N.T. Pg. 16, Oct. 8, 2008).

Detective Cruz was not present at the arraignment. (N.T. Pg. 18, Oct. 8, 2008).  Following

Defendant's arraignment on the conspiracy charge, he was returned to the Lehigh County Prison.

In accordance with standard county practice, Defendant was asked upon his return to the prison if

he wanted a public defender to be assigned to his case, and Defendant responded that he did. (Hr.

December 4, 2008).  At the hearing on December 4, 2008, Chief Deputy of the Lehigh County

Public Defender's Officer, Earl C. Supplee, III testified that his Office's records indicate Defendant

had requested a lawyer after the first arraignment.[1]  Defendant has attached a letter from the Public

Defender's Office confirming representation as Exhibit 4 to his Second Supplemental Motion to

Suppress.

---

[1]Chief Deputy Defender Supplee testified on the general procedure for assigning a public defender as well as on Defendant's case specifically.  He explained that when a defendant cannot post bail, he is returned to the jail and booked, at which time the booking officer will ask the prisoner if he or she wants a public defender and will mark the prisoner's response in a computer system.  The Public Defender's Office will then get a tracking sheet the following day for all prisoners requesting counsel and will send a letter to those prisoners confirming representation.
Based on the Office's records, Chief Deputy Supplee testified that Defendant requested an attorney after his first arraignment for conspiracy on Friday morning and that the Public Defender's Office received notice of this request on the morning of the next business day, Monday, May 22, 2008.  The Chief Deputy further testified that a letter was sent to Defendant regarding his representation, which presumably covered all charges filed on Friday and Saturday from both arraignments.

After completing the search of Apartment No. 12, at approximately 6:00 or 7:00 a.m. on May 19, 2006, Detective Cruz testified that he went off-duty. (N.T. Pg. 22, Oct. 8, 2008). When Detective Cruz returned to duty, at approximately 4:00 p.m. on May 19, 2006, he examined the evidence obtained during the search. Detective Cruz then secured a writ from a magistrate to have the Defendant brought from the Lehigh County Prison to the Allentown Police Department, at approximately 9:30 p.m. on May 19, 2006. Once Defendant was at the Police Department, Detective Cruz intended to prepare additional charges arising from the evidence found at the apartment and provide Defendant with another opportunity to truthfully explain the situation. (N.T. Pgs. 23-24, 52-53, Oct. 8, 2008). Defendant was brought to an interview room at the Police Department and advised that, based on the evidence found during the search of his alleged apartment, additional charges would be filed, including possession with intent to deliver heroin, possession of cocaine, and possession of a firearm. (N.T. Pgs. 24-25, Oct. 8, 2008).

Detective Cruz testified that he then gave the Defendant Miranda warnings, and Defendant gave both a verbal and written consent to the interview by Detective Cruz, during which Defendant allegedly made incriminating statements. (N.T. Pgs. 30-31, Oct. 8, 2008). According to Detective Cruz, Defendant had previously asserted that because Apartment No. 12, the location of the search, belonged to his wife and he did not live there, he could not give consent to the search. (N.T. Pgs. 32-33, Oct. 8, 2008). During the interview, Defendant admitted that the apartment did belong to him and he did not consent to the search because he knew that heroin was in plain view on the table. (N.T. Pgs. 33-34, Oct. 8, 2008). Detective Cruz then prepared additional charges against the Defendant, which were filed in a new criminal complaint, separate from the original complaint containing the charge for criminal conspiracy to deliver heroin, and Defendant was arraigned on

those additional charges at approximately 12:30 a.m. on May 20, 2006.  (N.T. Pgs. 25-27, Oct. 8 2008).

### B.    Procedural History

On January 30, 2008, Defendant filed a Motion to Suppress Post-Arrest Statements and Physical Evidence Pursuant to the Fifth Amendment, (Doc. No. 24), and a Motion to Suppress Physical Evidence, (Doc. No. 25).  The Motion to Suppress Physical Evidence, which asserted that the search warrant was invalid and evidence secured as a result should be suppressed, was denied by Judge Golden, to whom this case was previously assigned, in a Memorandum and Order dated August 12, 2008.  (Doc. No. 79).  On March 11, Defendant filed a Supplemental Motion to Suppress Post-Arrest Statements.  (Doc. No. 64).

After the case was reassigned to the undersigned, Defendant requested an additional evidentiary hearing to secure suppression of statements made by the Defendant during and shortly following his arrest, as raised in the initial and Supplemental Motions to Suppress Post-Arrest Statements.  (Doc. No. 24).  The evidentiary hearing was held on October 8, 2008, following which the parties filed briefs.  Defendant then filed a Second Supplemental Motion to Suppress on October 20, 2008, (Doc. No. 88), in which Defendant requested a further evidentiary hearing to present additional facts warranting suppression of inculpatory statements made to Detective Cruz after his first arraignment in state court but before the second arraignment.  The Court held an additional hearing on December 4, 2008, during which the Court heard testimony from the Chief Deputy of the Lehigh County Public Defender's Office, Earl C. Supplee, III .

## II.      Analysis

### A.      Suppression of Statements Made During and Shortly After Defendant's Initial Arrest for Conspiracy

Through his various motions, Defendant has sought to exclude statements made by the Defendant during and shortly after his first arrest for conspiracy to deliver heroin.  Specifically, Defendant asserts that the oral statement inside the pizza shop regarding the two cell phones was obtained in violation of Defendant's Fifth Amendment <u>Miranda</u> rights and without a valid waiver. Similarly, Defendant argues that the statements outside the shop refusing consent to a search of Apartment No. 12 and denying occupancy of that Apartment were obtained in violation of his rights.

Constitutional protections against self-incrimination under the Fifth Amendment are triggered only by a custodial interrogation.  <u>Thompson v. Keohane</u>, 516 U.S. 99, 102 (1995).   A custodial interrogation occurs when law enforcement officials initiate questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Id.</u> (quoting <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)).  A defendant is in custody when a reasonable person in the defendant's position would perceive that he or she is not free to leave. <u>Stansbury v. California</u>, 511 U.S. 318, 325 (1994); <u>see also</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984) (when determining if a suspect is "in custody," the only relevant inquiry is how a reasonable person in the suspect's position would have understood his situation").   An interrogation refers "to any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980).

-6-

As to Defendant's statements about the cell phones, this Court finds that Defendant was not subject to the type of custodial interrogation that invokes the <u>Miranda</u> protections.  Assuming, <u>arguendo</u>, that police had taken Defendant into custody when they initially approached him inside the pizza shop, the Detective's informal question, which was asked as they were preparing to leave the store and regarded whether the cell phones left on the counter belonged to Defendant, is not an interrogation under <u>Miranda</u>.  There is no indication that the police intended to elicit incriminating statements from that question or that a reasonable officer would expect an incriminating response.

With regard to Defendant's statements about the Apartment, this Court also finds no constitutional violation.  Defendant had already been given his <u>Miranda</u> rights at the time he made the statements, and Detective Cruz and Detective Boyer testified that he orally waived them.  (N.T. Pgs. 12, 66, Feb. 19, 2008 AM).  The Defendant has not offered any reason to discredit the Detectives' testimony.  As such, there is no indication that Defendant did not give a "voluntary, knowing, and intelligent" waiver of those rights.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).

**B.** **Defendant's Statements Made After the First Arraignment on the Conspiracy Charge But Before the Second Arraignment on the Additional Charges**

Defendant's motions have also sought suppression of statements, both written[2] and oral,[3]

---

[2]The Court believes the written statement Defendant is referring to occurred after the arraignment on the conspiracy charge and before the formal charges for possession were given, during Detective Cruz's interview of Defendant.

[3]Defendant's Supplemental Motion refers to statements made on May 18, 2008 about the items in the Apartment.  None of the detectives who testified, before either Judge Golden or the undersigned, referred to statements made on that date.  However, Defendant's Supplemental Motion cites to a point in the hearing before Judge Golden when Detective Cruz testified on the May 19, 2008 interview and the statements Defendant made concerning the Apartment in that interview.  The Court thus believes Defendant was referring to statements made during Detective Cruz's interview rather than any comments on May 18, 2008.

-7-

made at Police Headquarters regarding responsibility for any contraband found in Apartment No.

12.  As to the written statement, Defendant asserts his waiver was not voluntary, knowing, or

intelligent, as required by Miranda, 384 U.S. at 444, because he was not read his rights in Spanish,

he did not waive them in Spanish, and he did not have the aid of an interpreter.  Defendant likewise

suggests that his oral statements were not voluntary for a number of reasons: (1) the police implied

that they would prosecute Defendant's wife if he did not cooperate; (2) the delay between the

interview and the arrest was unreasonable; and (3) the statements were the fruit of an illegal search

of Apartment No. 12 made pursuant to a search warrant that lacked probable cause.  As to the

latter, in denying the Motion to Suppress Physical Evidence, Judge Golden has already determined

that the search warrant was valid, and thus statements made regarding the fruits of that search are

likewise valid.  Finally, Defendant argues that all of his statements made at Police Headquarters

between the two arraignments are inadmissible because he had invoked his Sixth Amendment right

to counsel after the initial arraignment.

## 1.    Voluntariness of Defendant's Statements

### a.    Miranda Rights Administered in English Only

When administering Miranda rights, police are required to communicate in a way that is

understood by a defendant or the defendant's waiver cannot be voluntarily, knowingly, and

intelligently made.  See Moran v. Burbine, 475 U.S. 412, 421 (1986) (requiring Defendant to have

understood his rights with "the requisite level of comprehension," based on the totality of the

circumstances, to effectuate a valid waiver); United States v. Perez-Lopez, 348 F.3d 839, 848 (9th

Cir. 2003) (requiring police to provide "meaningful advice to the unlettered and unlearned in a

language which [they] can comprehend and on which [they] can knowingly act") (internal citations

omitted).  However, even in situations where administering <u>Miranda</u> rights in Spanish is

preferable, there is no violation where the record indicates that a defendant "understood those

rights as they were being read to him in English, and responded to all questions in English,"

thereby "demonstrat[ing] sufficient understanding of the English language for purposes of the

interrogation."  <u>United States v. Lugo</u>, 170 F.2d 996, 1004 (10th Cir. 1999); <u>see also</u> <u>U.S. v.</u>

<u>Donzo</u>, 2007 WL 2173396, at *7 (E.D. Pa. July 26, 2007) (finding valid waiver of <u>Miranda</u> rights

where evidence demonstrated that the defendant could read, speak, and understand English, even

though English was not the defendant's native language).

Police here initiated communication with Defendant in English.  Defendant responded in

English, and the Police then administered the <u>Miranda</u> warnings in English, under the impression

that the Defendant understood that language.  Defendant proceeded to waive his rights in English

and provided a written statement in English.  There is nothing in the record to suggest that

Defendant did not have sufficient command of the English language to understand his rights as

they were told to him by the Police.  Thus, there is no violation concerning the written or oral

statements based on the administering and waiving of <u>Miranda</u> rights in English.

### b.   <u>Alleged Threats to Defendant's Wife</u>

Defendant asserts that because the police failed to deny any intention to arrest Defendant's

wife, he reasonably concluded that the police had implicitly threatened to arrest her if he did not

cooperate.  Thus, Defendant argues he was coerced into giving incriminating statements.  The

Supreme Court has held that "coercive police activity is a necessary predicate to a finding that a

statement was not voluntary."  <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986); <u>see also</u> <u>Lam v.</u>

<u>Kelchner</u>, 304 F.3d 256, 264 (3d Cir. 2002) (explaining that a statement is involuntary when the

defendant's "will was overborne in such a way as to render his confession the product of coercion").  In assessing whether a defendant's will has been overborne, the court applies a totality of the circumstances test that considers factors such as the education and intelligence of the accused, the lack of advice on his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Based on the testimony, the Court rejects Defendant's argument that such coercion occurred.  The Supreme Court has noted that coercion may be mental as well as physical, Arxona v. Fulimante, 449 U.S. 279 (1991), and other courts have found that explicit threats to family members may, when combined with other coercive tactics, render statements involuntary, see, e.g. Lynumn v. Illinois, 372 U.S. 528, 534 (1963) (concluding confession was involuntary when made after three policemen encircled defendant and threatened to cut off financial aid to her children); Spano v. New York, 360 U.S. 315, 323 (1959) (noting coercion occurred where police conducted an extended interrogation of defendant and had defendant's good friend tell defendant that his actions had gotten the friend in trouble and put the friend's family at risk).

However, the courts also consider other factors, such as the defendant's age, experience with the judicial system, and the police's right to detain a family member.  See, e.g., United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002) (finding statement voluntary despite alleged threat of legal action against defendant's girlfriend and daughter because defendant was an adult who had experience with judicial system and would not have lost the "will to resist"); Thompson v. Haley, 255 F.3d 1292, 1296-97 (11th Cir. 2001) (concluding confession was voluntary even though police told defendant his girlfriend might go to electric chair if he did not confess because police had

probable cause to arrest girlfriend for murder).

The police in the instant case were interested in Defendant's wife's involvement in the drug trafficking activity, and Defendant admits he was aware of that interest.  The government was under no obligation to explicitly deny their intention to arrest Defendant's wife, especially when they were investigating her involvement.  Furthermore, unlike in Lynmun and Spano, the Defendant does not suggest the police here threatened his wife's health or safety.  Also unlike in Lynmun and Spano, Defendant provides no evidence that Police made any explicit promises to not prosecute Defendant's wife if Defendant cooperated, or any threats to do so if he did not.  Rather, Defendant's argument is based solely on his "reasonable conclusion" that the failure to explicitly tell Defendant his wife would not be arrested implicitly indicated police intended to do so without his cooperation.  This is pure speculation.  The Court cannot conclude that any statements by Defendant, an adult who was given, understood, and waived his Miranda rights, were involuntary due to perceived threats of prosecution against his wife when the record does not reveal any such threats were actually made.

### c.      Delay Between Defendant's Arrest and Interrogation

Defendant also contends that the twenty-four-hour delay between his arrest for conspiracy in the evening of May 18, 2008 and his interrogation by Detective Cruz in the evening of May 19, 2008 amounted to coercion.  While the Supreme Court has noted that a court may consider the length of a defendant's detention before being formally charged and the prolonged nature of questioning when assessing improper coercion, see Schneckloth, 412 U.S. at 225, Defendant cites no rule or case that suggests the delay between an arrest and an interrogation itself suggests coercion.  Defendant does refer to 18 U.S.C. § 3501 for the proposition that any interrogation made

-11-

more than six hours after an arrest is improper.  However, § 3501 provides that when a statement is

voluntarily made within six hours of an arrest, it shall not be inadmissible solely because the

defendant had not yet been brought before a magistrate judge.  See also Corley, 500 F.3d at 215-20.

That Statute does not provide a six hour maximum for admissible statements made after the

defendant has been arraigned before a magistrate judge, as happened here.

      The government offers a reasonable explanation for the delay between the arrest and the

interrogation, namely that Defendant was arrested late at night and the arresting Detective was then

involved in the search of Defendant's alleged apartment, after which the Detective went off duty.

Once Detective Cruz returned to duty, he examined the evidence obtained during the search to

determine if any additional charges would be filed and then arranged for Defendant to be brought

from the prison to Police Headquarters for questioning.  Given these facts, the delay is not

unreasonable.  Thus, considering the totality of the circumstances, this Court does not find that

Defendant's statements were involuntary.

### 2.      Defendant's Sixth Amendment Rights

      Defendant further contends that regardless of whether his statements between the two

arraignments were voluntary, his Sixth Amendment rights had attached after the first arraignment,

barring any subsequent interrogation and requiring suppression of all statements obtained during

the interview with Detective Cruz.[4]  Defendant suggests that the Sixth Amendment applies to those

---

[4]The government objects to the Court considering the Sixth Amendment argument because the Defendant did not raise it in his original or supplemental Motions to Suppress and therefore waived his right to challenge those statements.  (See Doc. No. 91).  The Court rejects the waiver argument because the initial Motions to Suppress clearly move for suppression of all physical evidence and statements made by the Defendant.  The Second Supplemental Motion was really unnecessary, and the Court will consider it as a supplemental brief intended to conform Defendant's earlier Motions to the evidence developed at the second evidentiary hearing.

statements because the second set of state charges were related to the first charge for conspiracy and also because the federal charges were nearly identical to the second set of state charges for possession.  Furthermore, in response to the government's argument that the double jeopardy clause's dual sovereignty doctrine renders the Sixth Amendment inapplicable here, Defendant urges this Court to hold that the doctrine does not apply in the Sixth Amendment context.

### a.        Defendant's Sixth Amendment Rights re: State Charges

Defendant first argues that the inculpatory statements made during the May 19, 2008 interrogation must be suppressed, regardless of his oral and written waiver, because Defendant had already invoked his Sixth Amendment right to an attorney after the first arraignment that morning. The Supreme Court has determined that a defendant's Sixth Amendment right to counsel attaches "at the initiation of adversary judicial criminal proceedings- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991).  If a defendant specifically invokes this right by requesting counsel, the police cannot initiate interrogation and a defendant cannot validly waive his right to counsel for that police-initiated interrogation.  Michigan v. Jackson, 475 U.S. 625, 635-36 (1986).

However, the Supreme Court has also clarified that the Sixth Amendment right is offense specific and "cannot be invoked once for all future prosecutions." McNeil, 501 U.S. at 175.  In Texas v. Cobb, the Court explained that the "definition of an 'offense' is not necessarily limited to the four corners of a charging instrument" and instructed courts to apply the definition of "offense" used in the double jeopardy context.  532 U.S. 162, 173 (2001).  In double jeopardy cases, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is

-13-

whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 283 U.S. 299, 304 (1932). The Cobb Court specifically commented, "We see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." 532 U.S. at 173. The Court also explicitly rejected applying a test that considers "closely related" or "inextricably intertwined" offenses, which are based on the same factual circumstances, as the same offense for Sixth Amendment purposes. Id.

This Court finds that Defendant did invoke his right to counsel with regard to the conspiracy charge, as he clearly requested representation under the Lehigh Count Procedures, after being formally arraigned. Thus, if the police's questioning of Defendant in the May 19, 2008 interrogation concerned the earlier charge for conspiracy, any comments made by Defendant must be suppressed. Defendant's oral and written waiver of such rights is irrelevant in this situation, as a defendant cannot waive his Sixth Amendment right once it has attached by a request for counsel. See Jackson, 475 U.S. at 636. However, if the interrogation was directed toward a separate "offense," under the standards outlined by the Supreme Court, Defendant's waiver was valid because he could not have invoked his Sixth Amendment right as to additional charges that had not yet been filed.

According to the Officer's testimony, the interrogation focused on the Defendant's alleged apartment; while possibly relevant to the conspiracy charge, the questions were directed toward establishing ownership of the items seized during the search, which were the basis of the yet-to-be-filed additional charges concerning possession of drugs and a firearm. Notably, Detective Cruz testified that the first arrest and charge for conspiracy was based on entirely independent evidence–the police's interception of a package of drugs brought by Ms. Irizarry and allegedly

-14-

intended for Defendant–that was not the subject of the interrogation, and the police did not intend to use the fruits of the search against the defendant in the conspiracy charge.  (See N.T. 48-50, Oct. 8, 2008).  However, even though the interrogation was clearly directed to the possession offenses arising from the search, if the charges for those offenses concern the "same offense" as the charge for conspiracy, the interrogation would still be barred by the Sixth Amendment right Defendant had already invoked.

The Defendant urges the Court to conclude that charges concern the same offense because (1) they are factually related; (2) the federal government adopted the two state cases under the same criminal number; and (3) the public defender's office included all charged offenses in their letter of representation.  This Court disagrees with Defendant's assertions.  In Cobb, the Supreme Court explicitly rejected consideration of the factual relationship of the offenses.  532 U.S. at 173.  The Court found no violation where the police questioned a defendant on a possible murder charge arising out of the same incident as a previous charge for burglary for which the defendant had already invoked his Sixth Amendment right.  Id.  Thus the mere fact that the prior charge and future charges related to the same general incident is not dispositive where the interrogation focuses on the future charge.

Furthermore, the Supreme Court has never held that how the government labels a case or how a county public defender office responds to a request for counsel is relevant to whether the offenses should be considered the same.  Under the Court's precedents, only the Blockburger test is relevant, and under that standard, the conspiracy charge is clearly different from the subsequent substantive charges for possession.  See United States v. Watkins, 339 F.3d 167, 177-78 (3d Cir. 2003) (concluding double jeopardy did not bar charge of importing cocaine after a charge of

-15-

conspiracy to import cocaine was already filed and dismissed because each is a distinct offense). Thus, Detective Cruz's interrogation regarding the apartment, which was directed toward the future possession charges, was not in violation of Defendant's Sixth Amendment right because that right had only attached to the conspiracy offense, and the conspiracy charge and the possession charges do not concern the same offense.  AS Defendant validly waived his rights and consented to the interview by Detective Cruz, his statements given in the interrogation do not require suppression.

> **b.**   **Defendant's Sixth Amendment Rights re: State and Federal Charges**

Defendant also suggests that the statements are barred under the Sixth Amendment because the federal charges constitute the same offense as the earlier state charges under the <u>Blockburger</u> test, and thus the questioning was improper.  There are several fundamental problems with Defendant's argument.

First, as noted above, the Sixth Amendment only applies when police questioning relates to the same offense as one for which the defendant has already be formally charged.  Defendant's federal charges are clearly not the same as the first state charge for conspiracy on which he was arraigned and to which his Sixth Amendment right had attached.  None of the later federal charges concern conspiracy.  Once again, the Third Circuit has held that conspiracy is a separate charge from the substantive offense for double jeopardy and therefore also for Sixth Amendment purposes.  <u>Watkins</u>, 339 F.3d at 177-78.

Defendant suggests in his brief that the second set of state charges for possession of drugs and a firearm are in fact identical to the federal charges under the <u>Blockburger</u> test.  However, this similarity is irrelevant because the interrogation and incriminating statements occurred before

-16-

Defendant was arraigned on the second set of state charges, so no Sixth Amendment right had attached to those charges.  This Court has already concluded that the interview concerning the second set of state charges was not protected by the Sixth Amendment right that Defendant had already invoked for his state conspiracy charge.  Thus even if the second set of state charges constituted the same offense as the federal charges, the Court finds there is no violation of Defendant's Sixth Amendment right with regard to the federal charges where there was no violation of Defendant's rights concerning the similar state charges.

### c.      Dual Sovereignty Doctrine

The government contends that the dual sovereignty doctrine bars application of the Sixth Amendment even if the Defendant's Sixth Amendment right had attached to state charges that constituted the same offenses as those in the federal charges.  Under the dual sovereignty doctrine, as developed in the double jeopardy context, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'"  Heath v. Alabama, 474 U.S. 82, 88 (1985).  Neither the Supreme Court nor the Third Circuit has addressed whether this doctrine operates in the Sixth Amendment context as well, though several other Circuits have considered the issue.

Four Circuits have held that the doctrine carries over to the Sixth Amendment.  See United States v. Burgest, 519 F.3d 1307, 1310 (11th Cir.), cert. denied, 129 S.Ct. 274 (2008); United States v. Alvarado, 440 F.3d 191 (4th Cir. 2006), cert. denied, 127 S. Ct. 81 (2006); United States v. Coker, 433 F.3d 39, 44-45 (1st Cir. 2005); United States v. Avants, 278 F.3d 510, 515-518 (5th Cir.), cert. denied, 536 U.S. 968 (2002).  In Coker, the First Circuit explained that Cobb clearly indicated that there was no difference between the meaning of "offense" in the two

contexts, and therefore, all of the Court's precedent regarding the definition of offense from the double jeopardy context, not just the <u>Blockburger</u> test, was incorporated into the Sixth Amendment context.  433 F.3d at 44.

Of the Circuit courts to have considered the issue, only the Second Circuit has concluded that the Supreme Court intended to incorporate only the <u>Blockburger</u> test, and nothing more, into the Sixth Amendment jurisprudence.  <u>See</u> <u>United States v. Mills</u>, 412 F.3d 325, 330 (2d Cir. 2005). The Second Circuit reasoned that <u>Cobb</u> clearly held that if the offenses are the same under <u>Blockburger</u>, the Sixth Amendment bars any interrogation, but the Supreme Court did not imply the existence of any exceptions to this straight-forward rule based on the violation of laws of different sovereigns.  <u>Id.</u>  Since the decision in <u>Mills</u>, the Second Circuit has clarified that its narrow holding in <u>Mills</u> only applies when the federal investigation is directly tied to, or arises out of, the state conduct.  <u>United States v. Worjloh</u>, 546 F.3d 104, 108 (2d Cir. 2008).  According to <u>Worjloh</u>, a federal interrogation is permissible after a defendant's Sixth Amendment right has attached to state charges where the federal interrogation is clearly independent of the state arrest and investigation, regardless of whether the federal and state charges were for the "same offense." <u>Id.</u>

For the reasons discussed above, resolution of the dual sovereignty issue is not required to dispose of Defendant's Sixth Amendment arguments concerning the federal charges.  However, where the Supreme Court has stated in clear, unequivocal language that there is "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel," <u>Cobb</u>, 532 U.S. at 173, all tests used to determine the definition of that term in the double jeopardy context likely apply to the Sixth Amendment context.  The Supreme Court's

-18-

failure to mention any suggestions is not dispositive.  The <u>Cobb</u> Court was faced with a particular

situation concerning two state charges; it's failure to comment on all foreseeable variations of that

issue, such as when the "same offense" violates the laws of different sovereigns, does not render its

unambiguous statement on the similarity of the word's meaning in the two legal contexts any less

comprehensive.

**III.    <u>Conclusion</u>**

      Defendant's motions to suppress the post-arrest and post-arraignment statements are thus

denied.  First, Defendant's statements made inside the pizza shop, during his arrest but before he

was given his <u>Miranda</u> rights, were not the product of a custodial interrogation.  Defendant also

waived his <u>Miranda</u> rights with respect to the statements outside the pizza shop, and the Court does

not find that the waiver or his statements were involuntary.  Furthermore, the oral and written

statements given during the interrogation by Detective Cruz were not involuntary.  Finally,

Defendant's Sixth Amendment rights, which attached to his first state charge for conspiracy, did

not bar the subsequent interrogation regarding the apartment and items seized therein.

      An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MAXIMO ESPINOSA | : | NO. 07-482 |

## **ORDER**

_____AND NOW, this 24th day of December, 2008, upon consideration of the Defendant's

Motion to Suppress Post-Arrest Statements and Physical Evidence (Doc. No. 24), Supplemental

Motion to Suppress-Post Arrest Statements (Doc. No. 64), and Second Supplemental Motion to

Suppress Post-Arrest Statements (Doc. No. 88), it is hereby ORDERED that all Motions are

DENIED.  It is further ORDERED that the United States' Motion to Deny Defendant's Second

Supplemental Motion to Suppress Statements (Doc. No. 91) is DENIED as moot.

BY THE COURT:

 /s Michael M. Baylson
Michael M. Baylson, U.S.D.J

O:\Lauren\USA v. Espinosa\Espinosa 07-482 - Memorandum draft 2.wpd